If it pleases the court, my name is Jim Mahatrick-Kloffs and Steve Young. I represent the plaintiff and appellant Alicia Wolin. We're here of course today reviewing a motion to dismiss under 12b-6 or a standard of review is de novo. There are just three points in my brief that I would like to highlight for the court. And the first one I think is the most critical and what I call the elephant in the room, which is under the situation that we have below is the denial of my client's rights to a jury trial on her gender discrimination claims. I don't understand that. Let's back up a minute. There was an administrative proceeding and there was a writ of mandamus. Now my understanding is that the res judicata turns not on the failure to raise it in the administrative proceeding but on the failure to raise it in court when you went on the writ of mandamus to join with that the writ of mandamus. Title VII or whatever are the cause of action you wanted to join with it. Is there any reason you couldn't have done that? Your Honor, and I agree with what the court said and I think that's the underlying cause here of the problem is we had a state governmental agency that set up an administrative hearing process for violations of local policy if you will. But we don't know from the record what she actually raised in that particular hearing. The question I asked has nothing to do with that. So could you answer my question? My question is once that administrative proceeding was over and she was challenging the result of it in a mandamus proceeding in Superior Court. Is that right? Yes. She went from the administrative. Is there any reason that she couldn't have joined with that mandamus proceeding in Superior Court her present causes of action? Yes, Your Honor. In the administrative. I'm not asking about the administrative. I apologize, Your Honor. In the writ of mandate proceeding, of course, that court was strictly limited to reviewing exactly what the evidence. Could you join with it? I'm asking a question of California procedural law. Could you? It is not unusual to have one lawsuit that has some causes of action that are only for judges and others that go to juries. For example, injunctive proceedings and damages. Is there any reason you couldn't have joined with the writ of mandate proceeding in a single proceeding the current causes of action? Yes, Your Honor. Under California law, she could only reason the mandate proceeding, those issues of what had happened in the administrative hearing. Under California law, she was not allowed to expand and say, okay, did this administrative agency ---- Could she have filed? I mean, I don't know the answer to this, and it is important, which is why I keep asking it. But you're still not answering it. Could she have filed the writ of mandate exactly as she filed it and joined with it, not as a review of the administrative proceedings and not as a writ of mandate, but in one pleading before a single superior court judge, one case, the current causes of action? Not as a writ of mandate, but as whatever they are. I don't believe so, Your Honor. Now, why do you say that when a case that you rely on for other purposes, the Mata case, California case, says, quote, or as respondents now concede, appellant could properly have taken the approach he did, joining the request for administrative mandamus with his complaint for violation of civil rights in violation of section 1983, close quote. That's the Mata case, 20, California appeal fourth at 147. Doesn't that say in plain English that you not only can join them, but in that case they did join them? Respectfully, Your Honor, I don't read it that narrowly. Maybe she could have filed a separate mandate proceeding and a separate civil suit raising these new additional claims, but then as I read the law, you're not supposed to bring the additional claims until you've resolved the mandate to see how much relief, assuming your mandate is correct, because the damages would have been different. So under California law, the idea is get the mandate out of the way, that's the preferred procedure, then go on to your civil action for the additional damages for the additional violations of other rights. So when the California appellate court said that in Mata that appellant could properly have taken the approach he did, joining the request for administrative mandamus with his complaint for violation of civil rights in violation of section 1983, you're saying the California appellate court didn't know what California procedure was? On this particular issue, my experience in the mandate proceedings, as the courts keep telling me when I've done these, all we're going to consider in the mandate proceeding is what this particular administrative agency did. If you have another complaint, fine, go file another complaint. But it's not proper because we're limited to this particular review. And therefore, in any sense of the word, whether in the mandate, you know, at the Superior Court, at the Court of Appeal level, these federal claims were never placed at issue. They weren't in the administrative hearing. They weren't in the mandate hearing. And as the court said in, quite frankly, the Wallin opinion, your remedy, counsel, is go file a district court action. So in this particular case, when the Court of Appeal said to Wallin, we're denying your writ, they're saying, but you can go file a district court action, which is exactly what she did. The underlying wrong that she's complaining about is that she was discriminated against on the basis of gender, yes? In the lawsuit, that is a correct statement, Your Honor. Why isn't that what she was complaining about in the administrative proceeding? In the administrative hearing, it was just more limited. Not per se was she discriminated against because she was a woman. In the administrative hearing, it was, was she automatically entitled to a promotion because she fell into a particular class? She wasn't singled out for discriminatory treatment. That wasn't under the 101A. That wasn't the administrative proceeding. That was simply she was saying, look, I fit into this class. I pass boards. I'm entitled to a promotion. There didn't have to be the discriminatory animus under the Hunter-LaLaye administrative hearing, where over here in the federal lawsuit, in the discrimination cases, they have to show a particular animus towards women, towards this particular woman, and that they didn't promote her because she was a woman, but not because she didn't fall under the Hunter-LaLaye proceeding. But, counsel, isn't the same primary right at issue, though, that she's complaining in both the administrative proceeding and in this new action that you want to bring, that she was denied the promotion, right? Isn't that the same primary right at issue? There's an overlapping of rights, as I discussed in my brief, but the exact rights are different. As the California courts have said, and it's in my brief, each statute creates a separate primary right. So that's number one. You've got the Hunter-LaLaye, which is one primary right. The cases are very murky, and so I would like your help in wending through them. At some points they seem to be saying, as Judge Watford said, if you're looking for – if your problem is that you didn't get a job, getting a job is the primary right. At other points they seem to be saying it matters what – if you're claiming you didn't get the job because of discrimination, that's one primary right. If you're claiming you didn't get the job because of a contractual violation, that's a different primary right. So where should we be looking? What is the governing California law on this question? What is it? Your Honor, if I understand the Court's question correctly – At what level of generality do we look at this? Pardon? At what level of generality do we look at this? The general thing is, like I said, California law looks at the first four primary rights. Statutes create different primary rights, but then it goes on and says – So are you saying that if somebody brought a cause of action for sex discrimination and then two years later brought a cause of action for race discrimination for the same thing, that that would be different primary rights? Here, absolutely, it would be – I'm not saying here. I'm just asking a hypothetical. It would be a different primary right because under the HUNTER-O-LAY thing, if you will, it's a very limited right, which is to – if you fall in the class, you're going to get promoted, versus the primary right over in – under the federal statute, which says, if you didn't get promoted because you're a woman, those are very different primary rights with very different damages. Can I ask you just about a particular case? I mean, I'll just be up front with you. I think we're bound by this Takahashi case. It's a little bit old now, but it's one of our precedents that applies California law in a context that seems very similar to the context at issue here. Is there some intervening development in California case law? I think maybe that's what Judge Berzon was asking you to point us to, some intervening California case that's come down that you think suggests that Takahashi was wrongly decided. In which case did you refer to, Your Honor? Takahashi case. Yes, Your Honor. I don't know if it's intervened, but I think it's a misapplication of that particular case. We're bound by that unless you can point us to something that suggests California law has now gone in a different direction from what we thought it was in 1980-whatever. Well, I think if nothing else, California law has gone in the direction that writ of mandate proceedings don't have race judicata effects, as the Court points out, in the sense that this Court's decision in Gallagher v. Frye says that mandate proceedings do not have race judicata effects because they're not regular lawsuits. They're special proceedings, and special proceedings don't fall under race judicata. So if we go back- Did Takahashi involve a mandate proceeding? Pardon? Did Takahashi involve a mandate proceeding? I don't think so, but without going and taking a quick look, I don't want to make a direct representation to the Court, but I don't think it did. Let's go on the assumption that it did, because I'm looking at- It did. Yeah. It was very similar to this case. I mean, I think that's one of the main cases your opponent relies on. I mean, just help us with that. As I said, unless you can give me some explanation for why we're not bound by that, I would be inclined to follow the Takahashi decision. It's one of our precedents. Like I said, if you will, then there's a conflict of precedents between does Takahashi apply in a mandate proceeding in light of Gallagher. Gallagher was earlier. This Court's also bound by Gallagher. Gallagher was earlier. I mean, yes, if there were a direct conflict, you're right. We would have an on-bank problem. And I really think, if we will, and I understand I'm getting short on time, is our biggest problem in this whole case, as I view it, and as I first picked up the file, is the inadequacy of the record in the trial court. We really don't know what issues were tendered before the administrative hearing officer. We don't know what was really in the mandate proceeding. We don't know what the complaints were. We don't know the reason for the decisions that the administrative hearing officer made, nor that the California courts made. All we know that is under Hunter of L.A., they said, you don't have standing. They never got, there's no discussion, there's nothing in the record, of whether this particular individual ever tendered the issue of discrimination, was ever discriminated against. And I think that may be the key thing in all of this. All the courts said is, you don't have standing. You can't even bring the claim you won under Hunter of L.A. because it doesn't apply to women. That has nothing to do with invidious discrimination against women. Here, she does have standing, if you will. She falls into the protected class. She's got the right allegations. So we're dealing with a very different animal of a person who didn't have standing to bring a claim over here. So they just said, you don't have standing, you're gone. Versus a person here who does have standing. And if nothing else, if we look at Takashika, this is a very distinct difference between the two where there wasn't the standing problem that there is here. Okay, you're going over time now, so thank you very much. Thank you very much, Your Honor. Good morning, may it please the Court. Paul Whittemore, Deputy City Attorney on behalf of L.A.'s. So picking up where we left off, looking at Mata. Mata says, as I understand it, that he could have filed a separate, as far as California law is concerned, he could have finished the administrative proceeding and then later filed an action under 42 U.S.C. 1983 in either state or federal court, and it cites Gallagher. And then it says that it wasn't raised due to Cotta in a state 1983 action either that the administrative proceedings had been completed, although that was all in one action. So in answer to the question whether, and then it discusses Takahashi at the end of the opinion, but isn't Takahashi in real tension with Mata? I think they could have joined both, could have joined the claims. I understand that, but Mata says they didn't have to. They could have brought a concurrent lawsuit and waited for the administrative proceedings to resolve themselves. In that case, then why wasn't it raised due to Cotta? Well, it wouldn't have been at that time because the issue would not have been decided if they brought it concurrently. I'm sorry, I don't understand that. They could have brought a concurrent lawsuit. But the issue was decided even though it wasn't decided? No, they could have brought a lawsuit concurrently or at the same time as their mandamus was written. But Mata specifically says they didn't have to do that. They could have brought it afterwards. They didn't have to. They could have brought it. I understand, but I'm wondering why you were reading Mata as essentially saying if you bring an administrative mandamus and don't join with it, as I understood your argument, separate federal or state discrimination claims, then even though in the administrative proceeding itself you couldn't have litigated the Title VII claims, it still is a matter of California law that's raised due to Cotta. That's your argument. Is that right? I'm not quite sure because you missed the administrative. There's the administrative process, which is LAPD. Once a decision has been made, then he goes to the superior court. That action is a superior court action for seeking a writ of administrative mandamus. At that point, he could have joined the claims. Okay, but Mata says he could have, but as a matter of California law, he didn't have to. I believe, okay, in this case, Mata, I didn't write down the date on Mata. There's been some development. That's 1993. There's been some development in the law since that case in other contexts because there is some confusion. So in Mata, what actually happened was he joined the two proceedings. So the rest, to that extent, is dicta. And what they mostly discuss is what he could have done after prevailing in the administrative proceeding, which is a different question. That is a different question, Your Honor. If he prevailed, it is a different question. And it's certainly quite distinguishable from the question that we have here. In this case, he brought a writ of administrative. He sought a writ of administrative mandamus. The writ was denied. He appealed that to the court of appeal. The court of appeal affirmed the decision. So we have a final judgment on the merits. There's no dispute about that. So let's go to the primary right issue. What do you have a final decision? The primary right is based on the harm suffered. The harm suffered here is she didn't get promoted because she's a woman. That's one way to say it. And the other way to say it was she had two primary rights. One was to have her contractual or third-party beneficiary contractual right, which it turns out she doesn't have one of, but she was asserting it, based on the settlement. And the other one is not to be discriminated against in the promotion. Well, the harm suffered is not getting the promotion. That's the harm that she suffered. So the question that there's that. There's different legal theories. You can say it was discrimination. You can say it was all the MOU. Excuse me. What Judge Burson, I think, is asking is this. We all agree that under California law, different theories that protect the same right will be barred by res judicata in the situation whether it's a subsequent lawsuit. But that's not the same as the question of what is the definition of a primary right. You want to define it, and there is certainly law supporting this in terms of injury. What's the ultimate injury? She didn't get the job. But there's another way of looking at it that's at least suggested in some cases that it's in terms of what was the right. The right was either to be free of discrimination in employment. That's the right that's asserted in the Title VII in 1983 action. Or it's the right to have a job because you fit within a protected group that has been mandated certain places kind of quota system. Now, that right probably doesn't exist. Ms. Waller was assertive. She had such a right, the administrative group, and then the state court said that's not a fair reading of the consent order. But the point was that was the right, the purported right that she was claiming to assert. And it's a different right from a right not to be discriminated against because as your adversary points out, it doesn't have anything to do with intent. So the question is where does California law say you look to define primary right? And this is where the California Supreme Court cases have said you look to the harm suffered. All right. Let's take a hypothetical. Suppose, I mean, this case is a little unusual because the administrative right has something to do with background discrimination. But suppose what she had was a contractual right to a job for a year and she claims they fired her after six months. And so let's leave the administrative part out of it too, say it's a private employer. So she says you violated my contractual right to be employed for a year. And then separately she brings a case in federal court saying you discriminated against me on the basis of race, having nothing to do with any contractual right. You just fired me because I was black. Is that the same primary right or a different primary right? It's still about firing her. It's the same primary right. Even though one of them is squarely contractually based and has nothing to do with a discrimination issue. Absolutely, Your Honor. That's a different theory. It's a different theory whether it's common law or statutory. There's different theories to get at the same harm. The harm is she didn't get the promotion. She's not getting the pay of a lieutenant. She didn't get the promotion. But for example, I mean, the damages measures are completely different because the underlying theories are completely different. The underlying wrong is considered to be different. I mean, in one case the wrong is you didn't get what I promised you. And in the other case the wrong is you've been, you know, personally infringed upon and you have emotional damages and so on. So it's in terms of the conceptual understanding of what's going on. Or suppose you have a tort claim and a contract claim. You know, you ran me over, and not only that, you promised not to run me over. So you have a contract claim, and then you have because you didn't get your contract extended, you were terminated. Then you have a racial discrimination claim because you got terminated. And then you might have some other claim. So your argument is if you're fired, you're fired, and it doesn't matter at all. The harm is you're firing. Well, no, I would say my harm isn't firing. My harm is that you're treating me terribly based on my race, and I have all kinds of, you know,  you've impeded my dignitary interest and made me feel terrible and put me in a bad situation with regard to my peers. And it's a completely different wrong. But now, on the other hand, if something one sees all the time, a complaint is brought for breach of contract, and there's also a claim that there was fraud in the inducement of the contract. If you brought those seriatim under virtually any accepted rules of res judicata, res judicata would bar the second lawsuit, even though the claim was, well, I'm no longer claiming contract breach. I'm now claiming fraud in the inducement. But the underlying events, the underlying injury are all the same. Even under federal law, that would be precluded, yes? Yes. And then you could bring it. I'm glad you said yes because it was a softball question. My point is there are different legal theories, different statutes, different common law theories that go to redress a harm suffered. So we have to look at the injury. The injury here is failure to promote. And the claim in, and it's clear that she's saying that she got failure to promote based on the Hunter-LaLaye consent decree as applies to women. So she's saying that I didn't get promoted because I'm a woman. Now, whether she brings that under. Excuse me. She's not saying that. She's saying you promised to promote me because I'm a woman. And I'm not saying that the reason you didn't promote me is because that you were discriminating against me. I'm saying I have a separate, let's call it contractual right to be promoted for whatever reason. In this instance, it happened because she was a woman. But suppose she had, let's take the woman out of it. Suppose she had said anybody who got a 95 was supposed to be promoted and I got a 95 and you didn't promote me so I'm bringing in administrative action. It would be the same case, right? You'd have the same position. We would have the same position that that issue has already been adjudicated. The harm suffered is she didn't get promoted. That issue has been adjudicated. Even if it had absolutely nothing to do with discrimination, her first administrative claim. Correct. Okay. Under that factual scenario, correct. Can you address the George case? The California Court of Appeals decision, George? Is that case? Not competently, Your Honor. Okay. I thought you addressed it in your brief. Let's see. 22, 23. Oh, maybe I was, I'm sorry. I was thinking of a different case. George? I mean, that case too seems to be in some tension with our decision in Takahashi. And it obviously comes much later in time. Well, the issues I was relating to George was to point out that there was actually a different harm. There, the harm was a loss of, let's see. I thought it was. Loss of, it's a different right, it's a right to continued employment. And that was through a disciplinary action, which is a different kind of procedural administratively. It's a different procedural process than the administrative procedure that we had here. But the harm seems to be, at least as I read George, the harm there seemed to be awfully similar in both actions. And nonetheless, the court said the second one could go forward. Again, I just, I don't know how we reconcile that with Takahashi, which seemed to take a very different approach to the definition of primary right under California law. Well, we do that by looking at the most recent California Supreme Court cases. Boeken, which is a 2010 case, which follows Microgen. Again, to try to focus the courts on, because we talk about primary rights. And we have a, there's a discord in the cases as to what that means. Because you have rights that come from statutes, you have rights that come from common law. So they focus on what is the harm suffered. So the most recent cases, especially Boeken, following Microgen, make it clear that when we're assessing what is the primary right, we look at the harm suffered. And our argument here is the harm suffered is she didn't get promoted. Wolin did not get promoted. That's the same harm that she brought in the administrative Menambas proceeding. It's the same one she's bringing here because of the same primary right. Raised judicata applies, and it clearly applies to administrative Menambas proceedings. As cited in my brief on page 16, Menambas proceedings are clearly entitled to raised judicata effect. So. Okay, thank you. Thank you. Your time has succeeded. We'll give you one minute in rebuttal, if you like. I'd just like to quickly raise two points. In our response to the Court's question about Tshika, I looked at my opponent's brief on page 16. The case is Takahashi, just so you know. It's not very nice to keep misstating it. The name of the case is Takahashi. Go ahead. Your Honor, the only thing I'd comment here is on my brief, I cited Jodwin v. County of Kern for the simple principle that each violation of statute creates a different primary right. And in many respects, that's what we're down to here. We have different primary rights that were never litigated. In the mandate proceeding, the administrative hearing, my client has a right to have those tried to a jury. Okay. Thank you very much. I appreciate the Court's time. Thank you.
judges: Rakoff, Berzon, Watford